## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

EDDIE BRILEY                                                      PLAINTIFF
ADC #116921

V.                           No. 5:19CV00107-KGB-JTR

DARRYL A. GOLDEN, *et al.*                                        DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.    Introduction

In this *pro se* § 1983 action, Plaintiff Eddie Briley ("Briley") alleges that Defendants violated his constitutional rights while he was a prisoner in the Delta

Regional Unit of the Arkansas Department of Correction ("ADC").[1] *Doc. 2.* Before Briley may proceed with this case, the Court must screen his claims.[2]

## II. Discussion

Briley alleges that, on February 3, 2019, a non-party officer wrote a major disciplinary charging him with four disciplinary violations for "essentially defending [him]self" against another inmate who attacked him. *Doc. 2 at 1.* According to the disciplinary report, when officers arrived to investigate a fight in Briley's barracks, they were unable to identify the two inmates who were fighting. Officers then reviewed video surveillance footage which showed that: (1) inmate Edward Howerton walked down the stairs "with his walking cane drawn"; (2) Briley walked down the stairs one minute later; and (3) Howerton approached Briley, and they "beg[an] fighting." *Id. at 7.* In response to the charges, Briley gave the following written statement: "After the end of the Superbowl game, I went to my assigned rack

---

[1]Briley is no longer incarcerated in the ADC. *See Doc. 4.*

[2]The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). Finally, a *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

…, and after putting my tablet down so that I could begin cleaning I was assaulted by inmate Howerton who used his cane and hands both on me. … Inmate Howerton began assaulting me as I was setting my tablet down." *Id. at 7-8.*

On February 12, 2019, Defendant Hearing Officer Keith Waddle ("Waddle") conducted a disciplinary hearing on the charges against Briley arising from the fight with Howerton. Briley made the following statement to Waddle: "I told the inmates that I told the Sgt. they were not cleaning the barracks. He [Howerton] approached me with his cane." *Id. at 5.*

Waddle convicted Briley of two of the four disciplinary charges: Code 05-5 (provoking or agitating a fight), and Code 05-3 (assault, any threat to inflict injury upon another, directly or indirectly). In his decision, Waddle relied on the statement of the charging officer, and found that Briley was "[a]ssaulting and/or fighting with another inmate." Waddle imposed punishment on Briley of sixty days of restricted commissary, phone and visitation privileges, twenty days in punitive isolation, and a reduction in his classification level. *Id. at 5-6.*

Briley later told Defendant Warden Darryl A. Golden ("Golden") that he had been found guilty of the disciplinary charges even though there was no supporting evidence. According to Briley, Golden asked if he had fought the inmate who attacked him; Briley said, yes, he had defended himself; and Golden said that was the reason he was found guilty. Golden told Briley to submit an appeal. Briley

appealed Waddle's disciplinary decision, which Golden affirmed on February 22, 2019. *Id. at 2.*

In his Complaint, Briley alleges the following claims challenging his disciplinary convictions: (1) no evidence supported Waddle's decision; (2) Waddle's decision was based on "nothing but pure bias"; and (3) Waddle disregarded Briley's statement, without giving any reasons. *Id. at 2.* Briley also alleges that he was improperly charged with violating Code 05-3, which is the "ADC threat[en]ing code." According to Briley, he should have been charged with battery under Code 4-8. *Id. at 3.*

Briley also claims that Golden "discriminated" against him and "treated [him] unfairly" because he affirmed Waddle's decision. According to Briley, he was treated differently from inmate Ruffel Johnson, who was also written a disciplinary report for "defending [himself]" against another inmate. Briley alleges that, unlike in his case, when Johnson appealed his disciplinary conviction, Golden reversed it. Briley believes that Golden treated Johnson more favorably because Johnson was a "jail porter," who cleaned around Golden's office, and thus had daily contact with him. *Id. at 2-3.*

Finally, Briley alleges that Defendant ADC Director Wendy Kelley ("Kelley") failed to properly train Waddle and Golden or implement safeguards to "to prevent such arbitrary actions." *Id. at 3.*

4

As relief, Briley seeks compensatory and punitive damages. He also requests the Court to "overhaul" the ADC's disciplinary process. *Id.*

### A.    Briley's Official Capacity Claims

Although Briley seeks only damages from Defendants, he has named them in both their official and individual capacities. *Doc. 2 at 1.*

The doctrine of sovereign immunity precludes Briley from obtaining monetary damages against Defendants in their official capacities. *See Reid v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (damages claims against state officials acting in their official capacities are barred "either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes").

Liberally construed, Briley's request to "overhaul" the ADC's disciplinary process might constitute a claim for injunctive relief. However, even if it were broadly construed in that way, it is now *moot* because Briley is no longer incarcerated in the ADC. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (prisoner's requests for declaratory and injunctive relief were rendered moot by his transfer to another facility because he was no longer subject to the allegedly unlawful conditions); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief were mooted by his transfer to another facility because such equitable remedies are "unavailable absent a showing of

5

irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again")

Accordingly, all of Briley's claims against Defendants, in their official capacity, should be dismissed, without prejudice.

## B.    Briley's Due Process Claim

To the extent that Briley raises a due process challenge to his disciplinary proceeding and subsequent convictions, his claim fails. The disciplinary papers attached to Briley's Complaint make it clear that, at the most, he served twenty days in punitive isolation, with thirty days of restricted privileges. A prisoner may only maintain a due process challenge to a disciplinary proceeding or conviction if he is deemed to have a liberty interest at stake. *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). A prisoner does *not* have a liberty interest in avoiding temporary disciplinary segregation and the suspension of privileges, because such punishment does not create an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 482-86 (thirty days in disciplinary segregation); *Phillips,* 320 F.3d at 847 (thirty-seven days in isolation and loss of privileges of contact visitation, exercise and chapel); *Portley-El v. Brill,* 288 F.3d 1063, 1065-66 (8th Cir. 2002) (thirty days in punitive); *Kennedy v. Blankenship,* 100 F.3d 640, 642-43 & n.2 (8th

Cir. 1996) (thirty days in punitive segregation, which included the suspension of mail, telephone, visitation and commissary privileges).

Similarly, a prisoner does not have a liberty interest in maintaining his classification level. *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976); *Sanders v. Norris,* 153 Fed. Appx. 403, 404 (8th Cir. 2005); *Hartsfield v. Dept. of Correction,* 107 Fed. Appx. 695, 696 (8th Cir. 2003); *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir. 1994); *Madewell v. Roberts,* 909 F.2d 1203, 1207 (8th Cir. 1990).

Briley's allegation that he was improperly charged, in violation of ADC policy, also fails. As a matter of law, the violation of prison policy, standing alone, does not rise to the level of a constitutional violation actionable under § 1983. *Moore v. Rowley,* 126 Fed. Appx. 759, 760 (8th Cir. 2005); *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997). In addition, it is well settled that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations. *Phillips,* 320 F.3d at 847.

Accordingly, Briley has not pled a viable § 1983 due process claim against any Defendant.

## C.    Briley's Equal Protection Claim Against Golden

Briley alleges that Defendant Golden "discriminated" against him by affirming his disciplinary conviction, but reversing the conviction of inmate Johnson, who worked as a porter near Golden's office. According to Briley, both he

and Johnson received their disciplinary charges simply "for defending [them]selves." *Doc. 2 at 2-3.*

Briley does *not* allege that he is a "member of a protected class or that his fundamental rights" were violated. *See Nolan v. Thompson*, 521 F.3d 983, 989-90 (8th Cir. 2008). To plead a viable "class of one" equal protection claim, Briley must allege facts suggesting that: (1) Golden "systematically and intentionally" treated him differently from similarly situated prisoners; and (2) there was no rational basis for the difference in treatment. *Id.*; *Phillips,* 320 F.3d at 848.

In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), the Court limited the circumstances in which a plaintiff can maintain a class-of-one equal protection claim:

> There are some forms of state action ... which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases, the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603.

Due to the inherently discretionary and individualized nature of the decisions made by state actors charged with managing and caring for prisoners, courts have recognized that prisoners' class-of-one claims alleging arbitrary treatment by prison

8

officials generally are not cognizable under *Engquist*. *See Howard v. Koeller*, 756 Fed. Appx. 601, 604 (7th Cir. 2018) (affirming the denial of a prisoner's "class-of-one" equal-protection challenge to disciplinary decision-making because of its "inherently discretionary" nature); *Glassey v. Ryan*, No. CV12-01490, 2016 WL 6080672, at *4 (D. Ariz. Mar. 7, 2016) (collecting cases); *Atkinson v. MacKinnon*, No. 14cv736, 2015 WL 506193, at *1 (W.D. Wisc. Feb. 6, 2015) ("It is well established that choosing when and how to apply [prison] discipline are discretionary decisions falling under *Engquist*[.]"); *Dawson v. Norwood*, No. 1:06cv914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) ("[T]he class-of-one equal protection theory has no place in the prison context where a prisoner challenges discretionary decisions regarding security classifications and prisoner placement.").

Prison disciplinary decisions are case-by-case determinations that are based on discretionary, subjective and individualized assessments. Although Briley claims that his case was identical to Johnson's because they were both "defending [them]selves," their respective disciplinary decisions required Golden to exercise his discretion in considering a host of factors that were specific to their individual

situations.[3] Thus, under *Engquist*, Briley has failed to state a viable class-of-one equal protection claim against Golden.

Finally, even if Briley's equal protection claim was deemed to be viable, one instance of unequal treatment is *not* sufficient to show that Golden "systematically and intentionally" treated Briley differently from similarly situated prisoners, as is required in a class-of-one equal protection case. *See Nolan*, 521 F.3d at 989-90 (explaining that a "class-of-one plaintiff" must provide "a special and detailed account" of how a defendant intentionally treated him differently from similarly situated others); *Weiler v. Purkett,* 137 F.3d 1041, 1051 (8th Cir. 1997) ("A few individual examples of unequal treatment are insufficient to provide more than minimal support to an inference of classwide purposeful discrimination.").

Accordingly, Briley has failed to state a viable equal protection claim against Defendant Golden.

### D.    Briley's Failure to Train Claim Against ADC Director Kelley

Because Briley has failed to demonstrate an underlying constitutional violation, his supervisory liability claim against Defendant Kelley fails as a matter of law. *See Mendoza v. United States Immigration & Customs Enforcement*, 849

---

[3]For example, in responding to a grievance Briley filed about Golden's allegedly "blatant discrimination," Golden stated that he had affirmed Briley's disciplinary conviction "due to the fact that video evidence shows [Briley] and I/M Howerton squaring off before [they] began fighting" and Briley was "a willing participant in the altercation." *Doc. 2 at 10-11*. Nothing suggests that similar evidence existed in Johnson's disciplinary proceedings.

F.3d 408, 420 (8th Cir. 2017) (supervisory liability claims "automatically fail for lack of an underlying constitutional violation"); *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000) ("Absent a constitutional violation, there [is] no basis for section 1983 liability on the part of [supervisors].").

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Briley's Complaint (*Doc. 2*) be DISMISSED, WITHOUT PREJUDICE, for failing to state a claim upon which relief may be granted.

2.    This dismissal be counted as a "strike" pursuant to 28 U.S.C. § 1915(g).

3.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 25th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE